# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:17-cv-234-MOC
## (3:13-cr-293-MOC-1)

| | | |
|---|---|---|
| **JERONZA THORNE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or

Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and his *pro se* Motion to Amend Under

Rule 15 of the Fed. Rules of Civ. P., (Doc. No. 7), as supplemented by appointed counsel, (Doc.

No. 29). Several *pro se* Motions are also pending. (Doc. Nos. 20, 24).

## I.    BACKGROUND

Petitioner was arrested in a stash house robbery sting operation. The criminal Complaint

was filed on October 18, 2013, and Petitioner's initial appearance was held that same day. (3:13-

cr-293 ("CR") Doc. No. 1). The Government moved for detention at the initial appearance, which

was granted at the preliminary hearing on October 24, 2013. (CR Doc. No. 10) (Detention Order).

The Indictment filed on November 19, 2013, charged Petitioner and two co-defendants,

Glentavis McCorey and Jason Hill, with multiple counts surrounding a stash house robbery

conspiracy. (CR Doc. No. 18). The charges pertaining to Petitioner are: Count (1), conspiracy to

commit Hobbs Act robbery (18 U.S.C. § 1951(a)); Count (2), conspiracy to possess with intent to

distribute cocaine (21 U.S.C. § 846); Count (3), possession of a firearm in furtherance of a drug

trafficking crime (Count 2) and crime of violence (Count 1) (18 U.S.C. § 924(c)); Count (4),

1

conspiracy to use or carry a firearm in furtherance of a crime of violence (Count 1) and a drug trafficking offense (Count 2) (18 U.S.C. § 924(o)); and Count (5), possession of a firearm by a felon (18 U.S.C. § 922(g)(1)).

The case went to trial in January 2015.[1] The jury found Petitioner guilty of all counts as charged in the Indictment. (CR Doc. No. 151).

The Presentence Investigation Report ("PSR") grouped Counts (1), (2), (4), and (5) and used the calculation for Count (2) which resulted in the highest adjusted offense level of 24. (CR Doc. No. 176 at ¶ 31, 49). The term of imprisonment for Count (3) is the term required by statute. (CR Doc. No. 176 at ¶ 53). Petitioner had seven criminal history points and two more points were added because he committed the instant offense while under a criminal justice sentence for possession of a firearm by a convicted felon, case number 3:06-cr-448. (CR Doc. No. 176 at 60, 61). This resulted in a total criminal history score of nine and a criminal history category of IV. (CR Doc. No. 176 at 62). The advisory Guideline range for Counts (1), (2), (4) and (5) was 77 to 96 months' imprisonment and Count (3) carried a mandatory consecutive term of 60 months' imprisonment. (CR Doc. No. 176 at ¶¶ 116-18).

In a Judgment docketed on February 8, 2016, the Court sentenced Petitioner at the bottom of the applicable Sentencing Guidelines range to a total of 137 months' imprisonment comprised of 77 months for Counts (1), (2), (4), and (5), concurrent, and 60 months for Count (3), consecutive, followed by a total of five years of supervised release. (CR Doc. No. 182).

Petitioner argued on direct appeal that the Court erred by denying his motion to dismiss the Indictment due to outrageous Government conduct and that sentencing manipulation warranted a downward departure sentence. The Fourth Circuit affirmed, United States v. Thorne, 661 F.

---

[1] The case was originally tried in September 2014 but it ended in mistrial.

App'x 791 (4th Cir. 2016), and the United States Supreme Court denied certiorari on March 27, 2017, Thorne v. United States, 137 S.Ct. 1386 (2017).

Petitioner timely filed the original § 2255 Motion to Vacate on April 25, 2017 arguing that (renumbered): (1) trial counsel was ineffective for failing to: (A) move to dismiss the warrant, Complaint and Indictment because the Hobbs Act conspiracy charge has no nexus with interstate commerce; (B) move to dismiss the indictment on speedy trial grounds; (C) challenge Counts (3), (4), and (5) because there were three Defendants and only two firearms; (D) file a motion to determine Petitioner's competency or pursue and insanity defense; (E) call defense witnesses at trial or impeach cooperating co-defendant McCorey; (F) challenge the jury instructions that lacked the elements of conspiracy; (G) challenge the Indictment or verdict for lack of allegations or prove that Petitioner knew in advance of the § 924(c) crime and that he aided and abetted it; (H) object that the record did not reflect that counsel read and discussed the revised PSR and addendum prior to sentencing; and (I) argue that the Court was authorized to sentence Petitioner below the mandatory minimum for the § 924(c) count; and (2) appellate counsel was ineffective for failing to raise each of these claims on direct appeal. (Doc. No. 1 at 17).

In the Motion to Amend filed on November 7, 2018, (Doc. No. 7), Petitioner additionally argues (renumbered): (3) the § 924(c) conviction in Count (3): (A) is duplicitous because it charges two predicate offenses in the same count and (B) because the predicate Hobbs Act conspiracy is not a predicate crime of violence pursuant to Johnson v. United States, 135 S.Ct. 2551 (2015).

On March 20, 2019, the Court Ordered Petitioner to show cause why his Motion to Amend should not be dismissed as time barred. (Doc. No. 9). Petitioner filed a Response arguing that, at the time the Motion was drafted, "the ruling [in Dimaya v. Sessions, 138 S.Ct. 1204 (2018)] had just came [sic] down … about April 17, 2018" and that Petitioner did not previously realize that

3

the case applied to him. (Doc. No. 10 at 2). In addition, he argues that he suffers a medical condition that requires him to be transferred between medical centers which disrupts his ability to find help with his legal proceedings. (Id.).

The Government filed a Response in Opposition to Petitioner's Motion to Amend arguing that Petitioner's new claims are untimely, procedurally barred, and without merit. (Doc. No. 16).

Petitioner filed a Reply arguing that he is ignorant of the law, that he has been undergoing "relentless" cancer treatment that is an extraordinary circumstance, and that the records show that he has acted diligently, and that neither his trial nor appellate lawyer raised the issues pertaining to Johnson or Dimaya. (Doc. No. 18 at 1).

The Court then appointed counsel to file a supplemental memorandum on Petitioner's behalf addressing the timeliness, procedural viability, and merit of the claims raised in Petitioner's *pro se* Motion to Amend. (Doc. No. 19). Before the Court issued its Order, However, Petitioner placed in the prison mail a *pro se* Motion to Amend/Correct that further addresses the § 924(c) claims. (Doc. No. 20). Petitioner also filed a *pro se* Motion to be Transported to an FMC after counsel was appointed. (Doc. No. 24).

Counsel filed a Supplemental Motion to Vacate arguing that Petitioner's first Motion to Amend is timely because it relates back to the original § 2255 Motion to Vacate and that the second Motion to Amend is timely because it relates back to the original § 2255 Motion to Vacate and is timely under § 2255(f)(3) because it was filed within one year of United States v. Davis, 139 S.Ct. 2319 (2019).

The Government filed a Response to Petitioner's Supplemental Motion to Vacate in which it argues that Petitioner's challenge to his Indictment as duplicitous is untimely, procedurally defaulted, and meritless. The Government concedes the timeliness of Petitioner's Davis claim but

4

nevertheless argues that the claim is procedurally defaulted and meritless. Therefore, it argues, Petitioner's original and amended § 2255 claims should be dismissed and denied.

## II.    SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The Rules Governing Section 2255 Proceedings provide that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. Rule 4(b), 28 U.S.C. foll. § 2255. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION[2]

## (1)    Ineffective Assistance of Trial Counsel Claims

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at

---

[2] Petitioner's claims have been consolidated, restated, and renumbered. Any arguments not specifically addressed in this Order have been considered and rejected.

Case 3:13-cr-00293-MOC   Document 213   Filed 06/29/20   Page 5 of 43

688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong addresses whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Petitioner raises a number of claims of ineffective assistance of trial counsel that will be addressed in turn.

### (A)    Sufficiency of the Charges & Evidence

Petitioner contends that trial counsel should have moved to dismiss Count (1), Hobbs Act conspiracy, because there were insufficient allegations and evidence of the interstate commerce element, and that counsel was ineffective for stipulating to the interstate commerce element.

6

Petitioner also alleges that he is actually innocent of Count (1) because the stash house and drugs were made up by the Government and did not exist. Petitioner further argues that there was insufficient evidence to support the conspiracies charged in Counts (1), (2), and (4), because there is no way to know if the jury found that Petitioner only conspired with the informant who was acting as a Government agent, and there is no way to know if the "other persons known and unknown" in the conspiracy were also Government agents and that the offenses were procured by outrageous Government conduct.

An indictment must contain the elements of the offense charged, fairly inform the defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense. United States v. Daniels, 973 F.2d 272, 274 (4th Cir. 1992). Absent a charge of "[e]very essential element of an offense," an indictment is invalid. Id. "When the words of a statute are used to describe the offense generally, they 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.'" United States v. Brandon, 298 F.3d 307, 310 (4th Cir. 2002) (quoting Hamling v. United States, 418 U.S. 87, 117-18 (1974)). Evidence is sufficient to sustain a conviction "if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942), *superseded on other grounds as stated in* Bourjaily v. United States, 483 U.S. 171 (1987); see also United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002) (when reviewing the sufficiency of the evidence following a conviction, the court views the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government).

The elements of a conspiracy charge are: "(1) an agreement among the defendants to do something which the law prohibits; (2) the defendants' knowing and willing participation in the

agreement; and (3) an overt act by one of the conspirators in furtherance of the agreement's purpose." United States v. Moussaoui, 591 F.3d 263, 296 (4th Cir. 2010). A person cannot conspire with a government agent. United States v. Hackley, 662 F.3d 671, 679 (4th Cir. 2011) (citing United States v. Lewis, 53 F.3d 29, 33 (4th Cir. 1995)). Therefore, "if all the participants in [a] scheme … were government agents, except for [defendant], then no conspiracy existed and [defendant] cannot be convicted of conspiring with himself." United States v. Hayes, 775 F.2d 1279, 1283 (4th Cir. 1985). However, an agreement can "exist… between two or more persons" even if one co-conspirator is acting as a government agent, if other co-conspirators are not government agents. United States v. Timmons, 233 F. App'x 206, 212 (4th Cir. 2007). When the charged crime is a conspiracy, "all that is necessary in the indictment is that the object of the conspiracy be set forth sufficiently to identify the offense which the defendant is charged with conspiring to commit." United States v. Matzkin, 14 F.3d 1014, 1019 (4th Cir. 1994).

A Hobbs Act crime has two elements: (1) robbery or extortion; and (2) interference with commerce. United States v. Williams, 342 F.3d 350, 353 (4th Cir. 2003); 18 U.S.C.A. § 1951(a). "Commerce" means "commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction." 18 U.S.C. § 1951(b)(3). The jurisdictional predicate of the Hobbs Act requires only that the government prove a "minimal" effect on interstate commerce. United States v. Taylor, 942 F.3d 205, 218 (4th Cir. 2019).

8

First, Petitioner contends that trial counsel was ineffective for failing to argue that the indictment insufficiently charged the interstate commerce element of Hobbs Act conspiracy. Count (1) charges that:

> Between on or about September 1, 2013 and on or about October 17, 2013, in Mecklenburg County, in the Western District of North Carolina, the defendants … did knowingly and willfully combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to obstruct, delay and affect commerce and the movement of articles and commodities in commerce, by robbery, as the terms "**commerce**" and "robbery" are defined in Title 18, United States Code, Section 1951(b)(1) and (b)(3), in that the **defendants planned to take cocaine from individuals they believed to be engaged in narcotics trafficking**, against their will and by means of actual and threatened force, violence, and fear of immediate and future injury.

(CR Doc. No. 18 at 1) (emphasis added). The Indictment cited the correct statute, adequately set forth the commerce element, and included specific allegations about the offense. It was therefore sufficient to charge all the elements of a Hobbs Act offense including the interstate commerce element.

Second, Petitioner contends that counsel was ineffective for failing to argue that the there was insufficient to support the interstate commerce element of the Hobbs Act conspiracy. As a preliminary matter, this is not truly a challenge to the Court's subject-matter jurisdiction. It is actually a claim of insufficient evidence. Whether the interstate element of a criminal charge "is demonstrated in an individual circumstance does not affect a court's constitutional or statutory power to adjudicate a case." United States v. Carr, 271 F.3d 172, 178 (4th Cir. 2001). Rather, such a challenge merely contests the sufficiency of the evidence supporting that element of the offense. Id. Subject-matter jurisdiction over criminal prosecutions is conferred on district courts by 18 U.S.C. § 3231. United States v. Hartwell, 448 F.3d 707, 716 (4th Cir. 2006).

Petitioner's contention that there was insufficient evidence of the interstate commerce element is meritless. Counsel moved to dismiss under Rule 29(a) based on the Government's

failure "to prove that there was a joint conspiracy to commit a Hobbs Act robbery [because] …
you cannot conspire with the agents" and both of the witnesses testified that there had not been
any agreement. (CR Doc. No. 194 at 236). The Government presented evidence, including several
recorded meetings at which Petitioner was present, that Petitioner and the two co-defendants
planned to rob a Mexican cartel stash house of between eight and 10 kilos of cocaine. Evidence
that Petitioner conspired with others to rob the drug traffickers' stash house was sufficient to satisfy
the statute. See, e.g., Taylor v. United States, 136 S.Ct. 2074, 2077-78 (2016) (evidence that
defendant attempted to rob marijuana dealers of their drugs and money was sufficient to satisfy
the Hobbs Act's commerce element; "the prosecution in a Hobbs Act robbery case satisfies the
Act's commerce element if it shows that the defendant robbed or attempted to rob a drug dealer of
drugs or drug proceeds. By targeting a drug dealer in this way, a robber necessarily affects or
attempts to affect commerce over which the United States has jurisdiction."); see Williams, 342
F.3d at 354 (finding that "robberies of drug dealers … impact[] a trade that plainly is both
economic and interstate in character."). Petitioner's suggestion that the evidence was somehow
invalid because it was obtained as part of a sting operation is meritless. See, e.g., Patterson v.
United States, 2014 WL 6769620 (W.D.N.C. Dec. 1, 2014) (noting that courts have consistently
held that reverse sting operations involving robbery of an imagined stash house of imagined
cocaine satisfies the interstate nexus requirement of the Hobbs Act); Robinson v. United States,
2013 WL 5570952 (E.D.N.C. Oct. 8, 2013).

Third, Petitioner contends that counsel should have challenged the conspiracies charged in
Counts (1), (2) and (4) because one of the alleged participants was a confidential informant ("C.I.")
who was acting as a Government agent, which could have resulted in a verdict based on
Petitioner's conspiracy with either the C.I. or a person "known or unknown" who also could have

been a Government agent. He also argues that the Government failed to prove that Petitioner would have distributed the cocaine rather than, for instance, using it himself. The Indictment charges in Counts (1), (2) and (4) that Petitioner and the other two co-defendants, neither of whom was an alleged Government agent, "did knowingly and willfully combine, conspire, confederate, and agree **with each other and other persons** known and unknown…" to commit Hobbs Act robbery, possess with intent to distribute cocaine, and use or carry a firearm in furtherance of a crime of violence and drug trafficking offense. (CR Doc. No. 18 at 1-3) (emphasis added). The jury found Petitioner guilty of each of these offenses as charged in the Indictment. (CR Doc. No. 151). Even if the individuals "known and unknown" were Government agents along with the C.I., Petitioner's agreement with his two co-defendants was a sufficient foundation for the conspiracy charges. See, e.g., Timmons, 233 F. App'x at 212 (even if one co-conspirator was acting as a government agent at the time of defendant's arrest, the agreement between defendant and at least two other co-conspirators was adequate for a conspiracy to exist).

Finally, to the extent that Petitioner contends that there was insufficient evidence of his participation in the conspiracy because it was induced by the C.I., which he alleges was outrageous Government conduct, this claim is barred because the Fourth Circuit considered and denied it on direct appeal. Thorne, 661 F. App'x at 791. Petitioner may not take a second bite at the apple by recharacterizing this claim as one of ineffective assistance of counsel. United States v. Dyess, 730 F.3d 354, 360 (4th Cir. 2013) (quoting United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009)) (it is well settled that a criminal defendant cannot "circumvent a proper ruling ... on direct appeal by re-raising the same challenge in a § 2255 motion."); see also United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion); Boeckenhaupt v. United States, 537 F.2d

1182, 1183 (4th Cir. 1976) (holding criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]").

Counsel was not deficient for failing to raise these meritless issues and Petitioner cannot demonstrate prejudice because there is no reasonable probability of a different outcome at trial had counsel raised them. See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

### (B)    Speedy Trial

Petitioner contends that counsel was ineffective for failing to argue that Petitioner's right to a speedy trial was violated because the Indictment was returned more than 30 days after the criminal Complaint was filed. In his Reply, (Doc. No. 5), Petitioner argues that his then-attorney, Erin Taylor, was aware that Petitioner was out on bond for a supervised release violation in case number 06-cr-448 and conceded that detention was appropriate at the initial appearance in case number 13-cr-293 on October 18, 2013, so no request for detention was pending. On October 24, 2013, Petitioner appeared for a preliminary hearing in case 13-cr-293 and the Government renewed the request to revoke bond in case 06-cr-448. Attorney Tate was aware that Petitioner was out on bond for the supervised release violation and conceded detention was appropriate. He argues that 32 days ran between October 17, 2013 to November 24, 2013, excluding the period between October 18 and 24.

The Speedy Trial Act provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges…." 18 U.S.C. § 3161(b). Periods excluded in computing the time within which an information or an indictment

must be filed, or in computing the time within which the trial of any such offense must commence include any period of delay resulting from other proceedings concerning the defendant, "including but not limited to … delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion…." 18 U.S.C. § 3161(h)(1)(D).

The criminal Complaint was filed in case number 3:13-cr-293 on October 18, 2013 and Petitioner made his initial appearance that same day. (CR Doc. No. 1). The Court's minutes indicate that the Government moved for detention at the initial appearance and a preliminary hearing and detention hearing was set for October 24, 2013. On October 24, 2014, the Government moved for detention and the Court entered an Order of Detention stating "[t]he Court revoked the Defendant's bond in a second pending case, 3:06-cr-448, and the issue of bond in this case is therefore moot. The Defendant is to be detained in both cases." (CR Doc. No. 10).

The 30-day limit to file an indictment commenced on October 17, 2013 when Petitioner was arrested in the 2013 case. Time ran for one day then was tolled pursuant to § 3161(h)(1)(D) on October 18, 2013 when the Government moved for Petitioner's detention. Time began running again on October 24, 2013, when the Court granted the Government's Motion, and ran for 26 days until Petitioner was indicted on November 11, 2013. The Government filed the Indictment within the Speedy Trial Act's 30-day window and no speedy trial violation occurred.

Petitioner contends that no detention motion was pending between October 18 and 24 because his lawyers in both criminal cases (06-cr-448 and 13-cr-293) had conceded on October 18 that detention was appropriate due to his supervised release violation in the 2006 case. This argument is conclusively refuted by the record.

13

Petitioner was arrested on a supervised release violation in case number 06-cr-448 on October 10, 2013. He was released on bond the next day and remained on bond until his arrest in case number 13-cr-293 on October 17, 2013. See (03:06-cr-448, Doc. No. 38). The Court's minutes reveal that the Government moved to detain Petitioner in the 2013 case on October 18, 2013. A hearing in both cases came before the Court on October 24, 2013, at which the Court addressed detention in both of the cases. See (CR Doc. No. 30 at 4-5) (defense counsel in the 2006 noting that Petitioner would like to move for a detention hearing on the supervised release, and acknowledging that the Court's ruling on that matter would render a detention hearing int eh 2013 case moot). At the hearing, the Court revoked Petitioner's bond in the 2006 case, ordered his detention in that case, and found that "detention is now moot [in the 2013 case] given the Court's ruling in the 2006 case." (CR Doc. No. 30 at 12). Petitioner's conclusory and unsupported allegations that defense counsel in both cases conceded detention on October 18 is rejected.

Counsel cannot be deemed deficient for failing to raise this meritless Speedy Trial claim and Petitioner cannot demonstrate prejudice because there is no reasonable probability that raising this meritless claim would have affected the outcome of trial. See Knowles, 556 U.S. at 123.

**(C)**     **Firearm Possession**

Petitioner contends that counsel was ineffective for failing to adequately challenge Count (3), aiding and abetting possession of a firearm in furtherance of a drug trafficking crime or crime of violence in violation of 18 U.S.C. § 924(c); Count (4), conspiracy to use or carry a firearm in furtherance of a drug trafficking crime or crime of violence in violation of § 924(o); and Count (5), possession of a firearm by a convicted felon in violation of § 924(g), because there was insufficient evidence of Defendant's possession. Specifically, he argues that there were three

14

Defendants and only two firearms, that and the Government failed to prove that he actively used, possessed, and carried a firearm in relation to a drug trafficking crime or crime of violence.

Sections 924(c) and (o) and 922(g)(1) all have an element of possession that must be proved beyond a reasonable doubt before a defendant can be convicted. See United States v. Saunders, 660 F. App'x 211 (4th Cir. 2016) (discussing §§ 924(c) and 922(g)). Actual possession is not necessary; constructive possession is sufficient. United States v. Branch, 537 F.3d 328, 342-43 (4th Cir. 2008). Constructive possession exists when the defendant exercised, or has the power to exercise, dominion and control over them. United States v. Gallimore, 247 F.3d 134, 137 (4th Cir. 2001). Constructive possession may be proved by either circumstantial or direct evidence. United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir. 1980). A jury "[may] consider proximity as part of [its] analysis of a defendant's constructive possession." United States v. Shrader, 675 F.3d 300, 308-09 (4th Cir. 2012). A person is liable for aiding and abetting a crime if he: "(1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." Rosemond v. United States, 572 U.S. 65, 71 (2014). In conspiracies, the Pinkerton[3] doctrine "makes conspirators liable for all reasonably foreseeable acts of their co-conspirators done in furtherance of the conspiracy." United States v. Cummings, 937 F.2d 941, 944 (4th Cir. 1991) (citing Pinkerton, 328 U.S. at 640). The scope of § 924(c)(1) "extends to cases where a co-defendant carries a weapon in a drug trafficking conspiracy." Cummings, 937 F.2d at 947.

Petitioner's arguments are refuted by the record insofar as defense counsel moved to dismiss under Rule 29, arguing that Petitioner should be acquitted of Counts (4) and (5) because "there's no evidence that Mr. Thorne either constructively or actually possessed the firearms" and

---

[3] Pinkerton v. United States, 328 U.S. 640 (1946).

15

they were only in the possession of co-defendants Hill and McCorey. (CR Doc. No. 194 at 236-38).

Further, the evidence of possession was sufficient to support Petitioner's convictions in Counts (3), (4), and (5). The Government presented evidence that Petitioner and co-defendant McCorey met with undercover agents on several occasions as part of a reverse-sting operation to plan the armed robbery of a Mexican drug cartel's supposed stash house of cocaine. (CR Doc. No. 193 at 11, 31). During the recorded meetings, agents told Petitioner that there would be armed guards at the stash house, Petitioner and McCorey indicated that they were planning to go into the stash house, and Petitioner and McCorey indicated that they were willing to shoot people during the robbery. See (CR Doc. No. 193 at 23, 29-30, 32, 66-67, 111-12, 154). After one of the meetings, Petitioner asked McCorey whether he would do the robbery with him and McCorey agreed. (CR Doc. No. 194 at 39). On the day the robbery was supposed to occur, Petitioner, McCorey, and the C.I. talked about needing to get some guns to do the robbery. (CR Doc. No. 194 at 13). The C.I. drove to get two of McCorey's guns and ammunition then picked up Hill. (CR Doc. No. 194 at 14-15). They drove to South Boulevard and came up with a plan to do the robbery by following a guy in through the door but they had not decided who was going to go in and rob the place or who was going to have the guns. (CR Doc. No. 194 at 16-18). They went to meet up with the undercover agents to do the robbery, McCorey handed over a bag containing two guns and ammunition to one of the agents, and they were arrested. (CR Doc. No. 193 at 75-77); (CR Doc. No. 194 at 18).

The foregoing evidence of Petitioner's agreement with the co-defendants to commit an armed robbery, his presence when co-conspirator McCorey obtained guns immediately before the planned offense, and his arrival at the pre-arranged meeting to commit the armed robbery of a drug stash house, establishes that Petitioner and McCorey aided and abetted each other in the possession

of a firearm during and in relation to Hobbs Act robbery, conspired to use and carry a firearm during and in relation to Counts (1) and (2), and possessed a firearm while a convicted felon. See, e.g., United States v. Stewart, 408 F. App'x. 755 (4th Cir. 2011) (evidence was sufficient to support defendant's § 924(c)(1) and 922(g) convictions where defendant's accomplice was seen brandishing two guns during the robbery, defendant was apprehended while running from a getaway vehicle near currency and a dye pack, and defendant stipulated to being a convicted felon); United States v. Ridley, 381 F. App'x 247 (4th Cir. 2010) (presence of guns and ammunition in defendant's trunk when he was pulled over by officers and said he was on the way to retrieve cash that had been stolen from him earlier in the evening was sufficient to establish at least constructive possession under § 922(g)); United States v. Ledbetter, 381 F. App'x 292 (4th Cir. 2010) (sufficient evidence supported defendant's § 924(c)(1) conviction where there was evidence that defendant bought a gun and told his grandmother that he knew the co-conspirator had a gun and surveillance video from the bank robbery showed that defendant looked in the bank window at the co-conspirator while he was brandishing a gun, and defendant had admitted before trial that he committed an armed bank robbery).

Counsel cannot be deemed deficient for failing to raise this meritless claim and Petitioner cannot demonstrate prejudice because there is no reasonable probability that raising this claim would have affected the outcome of trial. See Knowles, 556 U.S. at 123.

**(D)    Competency and Insanity**

Petitioner argues that trial counsel was ineffective for failing to file a motion to determine his competency, or for failing to pursue and insanity defense based on various mental health diagnoses. He claims that counsel, the Government, and the Court knew about Petitioner's mental

17

health history because it was included in the PSR and that the Court made a mental health recommendation at sentencing.

A district court must order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a) (2012). Whether "reasonable cause" exists is a question left to the sound discretion of the district court. United States v. Bernard, 708 F.3d 583, 592 (4th Cir. 2013). Reasonable cause may be established through "evidence of irrational behavior, the defendant's demeanor at trial, and medical opinions concerning the defendant's competence." Id. at 592-93 (internal quotation marks omitted). The mere presence of "mental illness is not to be equated with incompetence." Id. at 593 (internal quotation marks omitted). Competency turns on "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Id. (internal quotation marks omitted). To prevail on an insanity defense in a federal criminal case, a defendant must show that "at the time of the commission of the acts constituting the offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17(a). The defendant bears the burden of proving insanity by clear and convincing evidence. 18 U.S.C. § 17(b).

Petitioner's claims of incompetency at the time of trial and insanity at the time of the offense are refuted by the record. At the Preliminary Hearing on October 24, 2013, Petitioner decided to address the Court despite counsel's advice to remain silent, told the Court that he understood his right to remain silent and nevertheless wanted to speak, and explained that he is not

a flight risk and should be released so he can provide for his kids. (CR Doc. No. 30 at 10-12). At Petitioner's first trial in September 2014, Petitioner comported himself appropriately and appeared to understand the proceedings. For instance, Petitioner stated that he understood he did not have to testify at pre-trial motion hearing, understood his right to testify at trial, that his mind was clear as to his constitutional right, and did not want to testify. (CR Doc. No. 135 at 29-30); (CR Doc. No. 139 at 54-55).

Petitioner filed several *pro se* Letters with the Court in between his first and second trials. In a Letter docketed April 9, 2014, he told the Court that it was unfair for law enforcement to prey on the weak in a fake stash house stings and that he had researched his case, and cited case law that he asked the Court to consider. (CR Doc. No. 44). In a Letter docketed June 5, 2014, Petitioner enclosed a newspaper article discussing federal courts that had found sting operations of fictitious crimes were outrageous government conduct. (CR Doc. No. 58).

At his second trial in January 2015, the Government entered into evidence a number of taped meetings at which undercover officers described the planned stash house robbery in which Petitioner cogently participated. Petitioner comported himself properly at the trial, responded appropriately to questions, was able to confer with counsel, and appeared to understand the proceedings. For instance, he told the Court that he understood his right to testify and was choosing not to testify at trial. (CR Doc. No. 195 at 26-289).

Petitioner sent the Court another *pro se* Letter that was dated three days after the verdict was entered, requesting a new lawyer because trial counsel had provided ineffective assistance for failing to follow his instructions: not to move to continue the trial date even though Petitioner asked him not to because of the Speedy Trial Act; to subpoena people as trial witnesses; by failing to ask the Court to remove two sleeping jurors; by failing to ask the Court to remove two jurors

who had heard about Petitioner's case on the news; and by failing to negotiate a five-year plea deal. (CR Doc. No. 154).

The PSR, which was filed November 3, 2015, states in the "Mental and Emotional Health" section that Petitioner was treated at age 11 for "Attention Deficit Hyperactivity Disorder; Bi-polar Disorder, depression and anxiety." (CR Doc. No. 176 at ¶ 100). A psychological evaluation on September 27, 1998 found that he was a "street smart egocentric adolescent who has the ability to communicate more or less effectively in order to have his own needs met…." (CR Doc. No. 176 at ¶ 101). Petitioner was diagnosed with: Attention Deficit Hyperactivity Disorder and Adjustment Disorder with Mixed Disturbance of Emotions and Conduct. (CR Doc. No. 176 at ¶ 102). An evaluation on August 31, 2011 made findings including Attention Deficit Hyperactivity Disorder and Antisocial Personality Disorder. The PSR further states that Mecklenburg County Jail records show Petitioner "is currently being treated for depression and anxiety and prescribed Olanzapine 20 mg (Zyprexa)." (CR Doc. No. 176 at ¶ 104).

At the sentencing hearing on January 28, 2016, Petitioner addressed the violation of supervised release, stating that it was not his intention to violate probation but that he did not have a place to stay and his probation officer was not able to offer him programs to help. (CR Doc. No. 197 at 9-11). With regards to the robbery case, Petitioner told the Court that he had read the PSR, went over it with counsel and understood, which counsel confirmed. (CR Doc. No. 197 at 15). He stated with regards to the robbery case that he had not intended to "make a mockery of the courts," went to trial for his daughter, and felt like he let her down. (CR Doc. No. 197 at 47). He further stated that he had been incarcerated for two years, "fighting [and] going to the law library…." (CR Doc. No. 197 at 48). He also expressed his feeling that the reverse sting was unfair because the Government tried to prey on people who were in a bad situation whom they had offered no help,

and that it would have been different had he come up with his own scheme and tried to recruit people, but it would have been different if Petitioner was out there coming up with his own plan and trying to recruit people for his own scheme. (CR Doc. No. 197 at 47-48). Petitioner further stated at the sentencing hearing that he understood his right to appeal. (CR Doc. No. 197 at 61).

The Court ordered as part of sentence that Petitioner submit to a mental health evaluation and treatment program under the guidance and supervision of the U.S. Probation Office, remain in treatment and maintain any prescribed medications until satisfactorily discharged by the program and/or with the approval of the U.S. Probation Office, and that he be housed in an institution such as Butner or Bennettsville for treatment of his mental health issues because that is where he previously received treatment. (CR Doc. No. 197 at 57-59).

Nothing about Petitioner's mental health history, his actions and statements at the time of the undercover sting, or his actions and statements at the time of his criminal proceedings indicate that he had a serious mental condition, did not understand the nature and consequences of his actions, or did not understand the nature and consequences of the criminal proceedings. Petitioner's written and oral statements also affirmatively indicate that he actively assisted in his defense. Petitioner does not offer anything other than his conclusory statements and prior diagnoses to support his claims that counsel should have moved for a competency hearing and presented an insanity defense. Counsel was not deficient for failing to request a competency hearing where the record reflected that the Petitioner understood the proceedings at all times and actively participated in his defense. See, e.g., United States v. Lewis, 724 F. App'x 269 (4th Cir. 2018) (trial court did not err in failing to order a competency hearing when the medical report considered by the court concluded that he was competent to proceed, the court questioned defendant about his medication and mental illness, and defendant's answers indicated he was able

to understand the proceedings, and a review of the plea colloquy indicates that he did not act erratically or irrationally during the hearing); <u>McWee v. Weldon</u>, 283 F.3d 179 (4th Cir. 2002) (counsel was not ineffective for failing to contest defendant's competency where he had been found competent to stand trial on two prior occasions, he testified at trial, he gave competent and clear answers to every question asked of him, and he further testified that he had discussed his constitutional rights with his attorneys before deciding to testify).

Nor was counsel deficient for failing to present an insanity defense that was not supported by the record and could have been counterproductive to Petitioner's case by damaging the defense's credibility. <u>See</u>, <u>e.g.</u>, <u>McWee</u>, 283 F.3d 179 (counsel was not ineffective for failing to present an insanity defense where there was overwhelming evidence that he was criminally responsible under state law and it would have hindered his ability to express remorse and acceptance of responsibility as potentially mitigating circumstances); <u>United States v. Boysaw</u>, 2009 WL 1797869 (W.D. Va. 2009) (defendant was not prejudiced by counsel's failure to raise an insanity defense where, although he was found insane four years prior to the offense, there was no evidence to suggest he was insane at the time of the offense, that he was suffering from a  severe mental defect or disease at the time, that he was unable to appreciate the nature and quality or the wrongfulness of his acts, or that there was any reasonable probability that raising a weak insanity defense would have been successful and, in fact, asserting a weak insanity defense could have hurt counsel's credibility).   Further, Petitioner cannot demonstrate prejudice because there is no reasonable probability of a different outcome at trial had counsel raises these issues. <u>Id.</u> Petitioner's ineffective assistance claims with regards to his competency and in insanity defense will therefore be denied as Petitioner has failed to demonstrate either deficient performance by counsel or prejudice.

**(E)** <u>**Defense Witnesses and Impeachment**</u>

Petitioner contends that counsel was ineffective for failing to call at trial witness Corey Mahatha and the C.I., for failing to adequately impeach co-defendant McCorey, and Petitioner further argues that the Government violated the Confrontation Clause by mentioning the C.I. but failing to call him. Petitioner argues that he was prejudiced because the C.I. admitted to Petitioner in a holding cell during trial that he lied about Petitioner because he was "in a jam." (Doc. No. 1 at 25). Petitioner told counsel about the C.I.'s statement but counsel refused to call the C.I. at trial. Petitioner claims that, if counsel had called the C.I. at trial and brought this out, Petitioner would have been acquitted. Petitioner further alleges that Mahatha is the C.I.'s best friend and told an investigator in prison as well as in a written statement that Petitioner is a "good dude," that he would have provided an "alibi" by testifying that he had never seen Petitioner with guns, and that he knew who committed the crimes and Petitioner was not one of them. (Doc. No. 1 at 25). Mahatha also said the told the C.I. not to set Petitioner up and that the C.I. replied, "I have to, they want me to set him up." (Doc. No. 1 at 25). Petitioner told counsel to call Mahatha to testify but counsel refused. Petitioner claims that he found a videotaped confession by co-defendant McCorey who said that he conspired with agents and law enforcement officers. He changed his story at trial and testified that he conspired with Petitioner, which contradicted his original statement. Petitioner told counsel to confront McCorey with this inconsistency, but counsel did not try to impeach McCorey or play the taped statement to the jury.

Counsel has wide latitude in determining which witnesses to call as part of their trial strategy. <u>See</u> <u>Wilson v. Greene</u>, 155 F.3d 396, 404 (4th Cir. 1998) (<u>quoting</u> <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1571 n. 9 (4th Cir. 1993)). The decision whether to call a defense witness is the epitome of a strategic decision that demands the assessment and balancing of perceived benefits

against perceived risks and is afforded "enormous deference." United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (quoting United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994)). Defense counsel's decisions regarding what questions to ask and how much time to spend on a particular witness are precisely the types of tactical decisions that a court is not supposed to second guess. Byram v. Ozmint, 339 F.3d 203, 209 (4th Cir. 2003) (quoting Strickland, 466 U.S. at 689) (the Fourth Circuit has been "highly deferential" to strategy decisions of lawyers, and there is a presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."). Speculative conclusions about who counsel failed to call and what aid their testimony would have provided to the defense are insufficient to demonstrate ineffective assistance of counsel. See Dyess, 730 F.3d at 364–65; see e.g., Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir. 1990) (a habeas petitioner "cannot establish ineffective assistance of counsel under Strickland[] on the general claim that additional witnesses should have been called…."); Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) (no ineffective assistance where no proffer is made of what favorable evidence or testimony would have been produced).

It is evident from the record that counsel decided not to call Mahatha and the C.I. as part of a reasonable trial strategy. Both of these witnesses had been subpoenaed and were available to counsel. However, Petitioner fails to demonstrate that either of these witnesses would have benefitted the defense. The C.I.'s decision to cooperate with law enforcement because he was "in a jam" does not undermine Petitioner's involvement in the armed robbery scheme, much of which was recorded by law enforcement officers. Nor does Mahatha's favorable opinion of Petitioner, unfavorable view of the C.I., and testimony that he had not seen Petitioner with a gun before, provide an alibi defense or otherwise undermine the evidence of Petitioner's guilt. Even if the C.I. and Mahatha testified consistently with Petitioner's allegations it would have had no direct bearing

24

on Petitioner's guilt and fail to undermine the strong evidence of his guilt, including recordings of several meetings and the circumstances of his arrest including his appearance for the planned robber with his co-conspirators and firearms. See, e.g., Huffington v. Nuth, 140 F.3d 572, 582 (4th Cir. 1998) (in light of other evidence linking defendant to the crimes, counsel's failure to obtain a defense witness' testimony does not raise a reasonable probability that undermines the court's confidence in the jury verdict). Further, examining the C.I. about his motivation for assisting law enforcement and his alleged discussion with Petitioner in the holding area during trial would not have negated the strong evidence of Petitioner's guilt and may have been harmful to the defense insofar as the jury might have learned that Petitioner communicated with him during trial in violation of the Court's sequestration order. See generally United States v. Terry, 366 F.3d 312 (4th Cir. 2004) (counsel was not ineffective for failing to call as witnesses inmates who might have weakened the defense case).

Moreover, counsel's alleged failure to adequately cross-examine McCorey is refuted by the record insofar as counsel did cross-examine McCorey on relevant matters. See (CR Doc. No. 194 at 20-39, 43-47). Additional cross-examination on McCorey's statement to police immediately following his arrest would not have been helpful to the defense because that statement does not conflict with his trial testimony in any material way. See (CR Doc. No. 4-1 at 7-8) (post-arrest interview of co-Defendant McCorey discussing the two undercover officers who set up the robbery in addition to the guys he rode with in the van including "Tattoo face"). None of the proposed areas of cross-examination would have undermined the strong evidence of Petitioner's guilt in any way. See, e.g. Runyon v. United States, 228 F.Supp.3d 569 (E.D. Va. 2017) (counsel was not ineffective for failing to cross-examine witness regarding inconsistencies were explained in the testimony or were irrelevant).

25

Petitioner has not come forward with any evidence that had a reasonable probability of changing the outcome of trial, therefore, the claim that counsel was ineffective in this regard will be denied.

**(F)    Jury Instructions**

Petitioner contends that trial counsel was ineffective for failing to challenge the jury instructions insofar as the conspiracy instructions did not include the requirement that Petitioner knew about, and voluntarily became part of, the criminal conspiracy; the Hobbs Act conspiracy instruction did not include the interstate commerce element; and the instructions did not require the jury to find that Petitioner intended to distribute the drugs.

As a general matter, a district court must give instructions to the jury that "fairly state[ ] the controlling law." United States v. Cobb, 905 F.2d 784, 789 (4th Cir. 1990). In determining the effect of a challenged instruction on the validity of a conviction, the allegedly erroneous instruction must be viewed in the context of the overall charge. Cupp v. Naughten, 414 U.S. 141, 146–47 (1973) (citing Boyd v. United States, 271 U.S. 104, 107 (1926)).

Petitioner's arguments are refuted by the record. The Court fairly stated the controlling law with regards to each of the charges by reading the indictment, relevant statutory provisions, and elements of each offense for each count that tracked the statutory language. See Cupp, 414 U.S. at 141. Petitioner's specific claims of error are meritless. The Court defined "conspiracy" for each charge alleging a conspiracy and informed the jury that it was impossible to conspire with government agents such as law enforcement officers and confidential informants. See (CR Doc. No. 191 at 23) (Count (1)); (CR Doc. No. 191 at 35) (Count (2)); (CR Doc. No. 191 at 56) (Count (4)). For the Hobbs Act conspiracy charged in Count (1), the Court included the commerce element and defined "commerce." (CR Doc. No. 191 at 28). Petitioner's contention that the commerce element did not exist because it was part of a reverse sting operation is meritless. See generally

26

United States v. Johnson, 561 F. App'x 288 (4th Cir. 2014) (evidence was sufficient to support defendant's § 1951(a) conspiracy, 924(o), 924(c), and 922(g) convictions where, as part of an undercover sting operation, co-conspirators met and discussed plans for the robbery of a cocaine stash house on several occasions, defendant selected a handgun to carry during the robbery, co-conspirators decided that defendant would be one of the individuals to enter the stash house and secure the occupants with duct tape, and defendant was arrested immediately before the planned robbery while armed with the handgun and five other guns were recovered during a search incident to the arrest); United States v. Williams, 342 F.3d 350, 355 (4th Cir. 2003) (robbery of a drug dealer is the type of act that satisfies the "affecting commerce" element under the Hobbs Act).

For the conspiracy to possess with intent to distribute cocaine charged in Count (2), the Court correctly instructed the jury that it had to find that two or more persons, directly or indirectly, reached an agreement to accomplish a common and unlawful plan, that is, to possess with intent to unlawfully distribute five kilograms or more of cocaine, that Petitioner knew of the unlawful purpose of the agreement, and that Petitioner joined in the agreement willfully, that is, with intent to further its lawful purpose. (CR Doc. No. 191 at 35). All of the elements of the offense are present and Petitioner's contention that the jury failed to find him guilty of that offense is legally and factually meritless. See United States v. Vailes, 369 F. App'x 450, 451 (4th Cir. 2010).

Trial counsel was not deficient for failing to object to the jury instructions that Petitioner has alleged were erroneous and Petitioner was not prejudiced because none of these arguments had a reasonable probability of resulting in a different outcome. See Knowles, 556 U.S. at 123.

### (G)    Sufficiency of Indictment & Evidence

Petitioner appears to argue that counsel was deficient for failing to challenge the sufficiency of the evidence to support Count (2) because there was no evidence to prove that

Petitioner would have distributed the cocaine rather than, for instance, using it himself. He also contends that counsel was ineffective for failing to challenge the Indictment and verdict because there was no proof that Petitioner knew in advance of the § 924(c) crime charged in Count (3) and that he aided and abetted that offense.

The Indictment charged in Count (2) that Petitioner and the two co-defendants "did knowingly and intentionally combine, conspire, confederate and agree with each other and with other persons known and unknown to the Grand Jury, to possess with the intent to distribute a controlled substance, that is, cocaine, a Schedule II controlled substance, a violation of Title 21, United States Code, Section 841(a)(1)." (CR Doc. No. 18 at 2). The substance at issue was alleged to be five kilograms or more of a mixture and substance containing a detectable amount of cocaine. (Id.).

The essential elements of possession with intent to distribute a controlled substance are knowingly and intentionally possessing a controlled substance with intent to distribute. 21 U.S.C. § 841(a)(1). A defendant's "[i]ntent to distribute may be inferred from possession of ... a quantity of drugs larger than needed for personal use." United States v. Fisher, 912 F.2d 728, 730 (4th Cir. 1990); see United States v. Burgos, 94 F.3d 849 (4th Cir. 1996). The drug conspiracy statutes provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. To convict a defendant under this statute, the government must establish: (1) an agreement to unlawfully distribute controlled substances existed between two or more persons; (2) defendants knew of the conspiracy; and (3) defendants knowingly and voluntarily became a part of this conspiracy. Burgos, 94 F.3d at 862.

28

The Indictment sufficiently charged conspiracy to possess with intent to distribute by citing the relevant statutes, following the statutory language, and describing Petitioner's alleged conduct with sufficient specificity. See Daniels, 973 F.2d at 274. Petitioner's contention that counsel was ineffective for failing to challenge the sufficiency of the evidence of his intent to distribute the cocaine rather than using it himself is meritless. Defense counsel raised this issue at trial and the Court rejected it, noting that Petitioner was involved in the scheme to make money, that the object of the robbery was cocaine from which Petitioner could make money, and Petitioner's co-conspirator, McCorey, suggested the possibility of giving a portion of the cocaine back to the undercover agents for them to sell and turn into cash. (CR Doc. No. 194 at 241); see also (CR Doc. No. 193 at 67, 127) (McCorey discussing selling the cocaine). This evidence was sufficient to establish conspiracy to possess with intent to distribute. See, e.g., United States v. Mouzon, 295 F. App'x 607 (4th Cir. 2008) (evidence including 248 grams of cocaine was circumstantial evidence of intent to distribute); United States v. Lamarr, 75 F.3d 964, 973 (4th Cir. 1996) (possession of a quantity of cocaine base slightly over five grams, when combined with testimonial evidence, was sufficient to support an inference of intent to distribute).

The Indictment charged in Count (3) that Petitioner and the two co-defendants, "aided and abetted by one another and during and in relation to a crime of violence, that is, [Count (1)], … and during and in relation to a drug trafficking crime, that is, [Count (2)], … did knowingly and unlawfully possess and carry a firearm in furtherance of such a crime of violence and drug trafficking crime…." (CR Doc. No. 18 at 2).

Section 924(c) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime[,] ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall receive a five-year mandatory-minimum sentence, with seven-

and ten-year minimums applicable, respectively, if the firearm is also brandished or discharged. 18 U.S.C. § 924(c)(1)(A). The federal aiding and abetting statute provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal." 18 U.S.C. § 2(a). Under § 2, "those who provide knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime." Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 181 (1994). A person is liable under § 2 for aiding and abetting a crime "if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." Rosemond, 572 U.S. at 71. An active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he advanced knowledge that one of his confederates will carry a gun. Id. at 77. However, when an accomplice knows nothing of a gun until it appears at the scene, he has not shown the requisite intent to assist a crime involving a gun. Id. at 78.

The Indictment sufficiently charged Count (2) by citing § 924(c), following the statutory language, alleging aiding and abetting, and describing Petitioner's alleged conduct with sufficient specificity. See Daniels, 973 F.2d at 274. Petitioner's contention that there was insufficient evidence that he had advance knowledge of firearm use is conclusively refuted by the record. The Court instructed the jury on the elements of a § 924(c) offense as well as aiding and abetting. (CR Doc. No. 191 at 49). The Government presented bountiful evidence of Petitioner's advance knowledge of firearm use and carrying in conjunction with the drug offenses, including several taped meetings during which Petitioner and co-defendant McCorey planned to rob the drug stash house with guns, Petitioner was present when McCorey retrieved two guns, and Petitioner knew the guns were present when they drove to the planned meeting place before carrying out the

robbery. <u>See</u>, <u>e.g.</u>, <u>Rosemond</u>, 572 U.S. at 74 (intent element of aiding and abetting is present when an active participant in a drug transaction knows ahead of time that one of the other participants will carry a gun).

Trial counsel was not deficient for failing to object to the sufficiency of the evidence to support Counts (2) and (3) of the Indictment which adequately charged and supported by the evidence. Petitioner was not prejudiced because these arguments did not have a reasonable probability of resulting in a different outcome at trial. <u>See</u> <u>Knowles</u>, 556 U.S. at 123.

      **(H)**     **PSR and Verdict**

Petitioner contends that trial counsel was ineffective for failing to object that the record did not reflect that counsel read and discussed the revised PSR and addendum prior to sentencing. He argues that, if counsel had raised the interstate commerce element/ lack of jurisdiction at sentencing, Petitioner's sentence would have been lower. Petitioner also argues that counsel should have raised as a PSR objection that the verdict form does not show that the jury returned the verdicts – it just stays "we find the Defendant … Guilty" but does not identify "we" and is not signed by any juror or the foreperson. (Doc. No. 1 at 44). Finally, he argues, the Judgment was not returned by the U.S. Marshal, was not served on Petitioner, and the return is not filled out which violates due process. He claims that all of the foregoing rendered the judgment void and he should be immediately released.

Petitioner's claims are lacking in any legal or factual foundation. Petitioner acknowledged at the sentencing hearing that he read the PSR, went over it with counsel, and understood it. (CR Doc. No. 197 at 15). The only things that got changed in the revised PSR and addendum were Petitioner's objections and the Probation Officer's responses recommending no change. (CR Doc. No. 197 at 17); (CR Doc. No. 181). Counsel cannot be deemed deficient for failing to have

Petitioner specifically acknowledge that he received and reviewed the revised PSR under these circumstances, and no prejudice could have resulted because the only changes to the PSR were ones reflecting requests by the defense.

Petitioner's argument about the commerce element of the Hobbs Act conspiracy charge is meritless and failing to raise it at sentencing was not deficient and could not have prejudiced Petitioner in any way. See Section (1)(A), *supra*.

Petitioner's contention that the verdict is not signed by the jury foreperson is incorrect; that document is in the Court's file under seal to protect juror identity. (CR Doc. No. 151-1). Moreover, the jury announced its verdict in open court, the jurors were polled, and they verified that the verdict was correct. (CR Doc. No. 196 at 8-11).

Petitioner's contention that the Judgment was not returned executed is also conclusively refuted by the record. (CR Doc. No. 198).

Counsel was not deficient for failing to raise these meritless issues and Petitioner was not prejudiced because, had they been raised, they would have been rejected. See Knowles, 556 U.S. at 123.

**(I)** **Sentencing**

Petitioner contends that counsel was ineffective for failing to argue that the Court was authorized to sentence Petitioner below the mandatory minimum for the § 924(c) count pursuant to Dean v. United States, 137 S.Ct. 1170 (2017). Petitioner argues in his Reply, (Doc. No. 5), that the Court disagreed with the advisory guideline range and reluctantly sentenced Petitioner to 77 months plus the § 924(c)'s 60-month minimum mandatory. He also argues that the Government manipulated the Court to release Petitioner on bond in his probation violation case so that he could commit the fictitious robbery, and manipulated the gun charges and drug amounts to ensure that

32

Petitioner, a mentally ill person, would receive harsh minimum mandatory sentencing and remove the Court's discretion.

The U.S. Supreme Court issued <u>Dean</u> on April 3, 2017, holding that "[n]othing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) and the related provisions to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." 137 S.Ct. at 1176-77. <u>Dean</u> was decided more than a year after Petitioner' was sentenced and more than four months after the appellate mandate issued on Petitioner's direct appeal. Counsel cannot be deemed ineffective for failing to anticipate this change in the law. <u>See</u> <u>United States v. McNamara</u>, 74 F.3d 514, 516-17 (4th Cir. 1996); <u>Honeycutt v. Mahoney</u>, 698 F.2d 213, 217 (4th Cir. 1983).

Moreover, Petitioner's claim of ineffective assistance is refuted by the record. Even though <u>Dean</u> had not yet been issued, trial counsel argued for a departure or variance in light of the statutory minimum mandatory terms for the § 924(c) and drug offenses. <u>See</u> (CR Doc. No. 197 at 21, 46-47). The Court considered the § 3553 factors including the seriousness and potentially violent nature of the offense, promoting respect for the law, protecting the public, and Petitioner's criminal history, and found that "a guideline sentence is warranted in this case…." (CR Doc. No. 197 at 55).

Petitioner's claim of ineffective assistance of counsel with regards to the § 924(c) mandatory sentence is without legal or factual support and will therefore be denied.

Petitioner's contention that the Government manipulated his charges is conclusively refuted by the record. Petitioner was correctly charged, convicted, and sentenced for each of the offenses as stated in other sections of this Order.

Petitioner has failed to demonstrate either deficient performance or prejudice, and therefore, this claim will be denied.

**(2)**     **Ineffective Assistance of Appellate Counsel**

The right to the effective assistance of counsel extends to direct appeal. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*). In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, a petitioner must normally demonstrate both deficient performance and prejudice, meaning that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." Smith v. Murray, 477 U.S. 527, 536 (1986) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail … is the hallmark of effective appellate advocacy.") (internal quotations marks and citations omitted). However, appellate counsel may render deficient performance by failing to raise "issues [that] are clearly stronger than those presented." United States v. Mason, 774 F.3d 824, 828-29 (4th Cir. 2014). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal … with the strength of the arguments that were raised." United States v. Allmendinger, 894 F.3d 121, 126 (4th Cir. 2018). To show prejudice, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86 (2000); see also United States v. Mannino, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

Petitioner contends that appellate counsel was ineffective for failing to raise the issues in claims (1)(A)-(I), *supra*. Petitioner's claim of ineffective assistance of appellate counsel is refuted by the record insofar as counsel addressed sentencing on direct appeal by arguing that manipulation by the Government merited a downward departure. <u>See</u> Claim (1)(I), *supra*. Petitioner has failed to explain what more trial or appellate counsel could have done that had a reasonable probability of resulting in a lower sentence or successful appeal.

Moreover, none of the issues that Petitioner has raised are meritorious, therefore, appellate counsel cannot be deemed deficient for failing to raise them on direct appeal. Even if counsel had done so, there is no reasonable probability that those claims would have succeeded on appeal. Therefore, Petitioner's claims of ineffective assistance of appellate counsel will be denied.

**(3)**     **<u>Amended Claims</u>**

In his "Motion to Amend" filed on November 7, 2018, Petitioner argues that his § 924(c) conviction in Count (3) is invalid because: (A) the Indictment erroneously charged two predicate offenses and the count is therefore duplicitous; and (B) Hobbs Act conspiracy is not a predicate crime of violence.

    **(A)**     **<u>Indictment</u>**

Petitioner claims that the Indictment is duplicitous insofar as it charges that Petitioner violated § 924(c) by using a firearm in furtherance of both a crime of violence and a drug trafficking offense.

A one-year statute of limitation applies to motions to vacate under § 2255, which runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

An otherwise time-barred petitioner is entitled to equitable tolling in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party." Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) (citing Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)); United States v. Prescott, 221 F.3d 686, 688 (4th Cir. 2000)("§ 2255's limitation period is subject to equitable modifications such as tolling.").

For an untimely claim relate back to the original timely-filed pleading, it must be shown that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In the context of a habeas motion, "conduct, transaction, or occurrence" does not mean the same "trial, conviction, or sentence," such that any claim that relates to the prior conviction or sentence challenged in a habeas motion is considered timely, no matter how long after the original motion it is filed. Rather, a proposed amendment relates back to the date of the original motion if it "state[s] claims that are tied to a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 664 (2005).

Petitioner's claim is not timely under § 2255(f). This claim was raised more than a year after the conviction and sentence became final, Petitioner has failed to raise any newly discovered

36

evidence, and no new retroactively applicable right with relation to this claim has been recognized by the Supreme Court. Nor has Petitioner adequately demonstrated equitable tolling such that this claim could not have been timely presented to the Court.

Nor does this claim relate back to the original timely filed § 2255 Motion to Vacate. In the original Motion to Vacate, Petitioner raised claims of ineffective assistance of trial and appellate counsel. His present claim of a charging error does not concern the same time and type of conduct or address the same core of operative fact as the ineffective assistance claims that he raised in the original timely Motion to Vacate. See, e.g., Pittman, 209 F.3d at 318 (a defendant's new habeas claim of ineffective assistance of counsel did not relate back to the original claims of improper sentencing enhancements and lack of jurisdiction); Dunnigan v. United States, 2019 WL 8137121 (S.D. W.Va. Feb. 12, 2019) (distinguishing a Sixth Amendment ineffective assistance of counsel claim from one of substantive error because they do not arise from the same core of operative facts); Clinton v. United States, 2011 WL 9688128 at *6 (N.D. W.Va. Aug. 15, 2011) (finding no relation back because claims of ineffective assistance of counsel and a government witness' alleged provision of false and misleading statements at sentencing "necessarily cannot concern the same 'time and type' of conduct" and do not share a common conduct, transaction or occurrence). Therefore, Petitioner's duplicity claim does not relate back and it is therefore subject to dismissal with prejudice as time barred.

Petitioner's duplicity claim is also procedurally defaulted from § 2255 review. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal citations omitted); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show

cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). Cause for procedural default exists "where a constitutional claim [was] so novel that its legal basis [was] not reasonably available to counsel." Reed v. Ross, 468 U.S. 1, 16 (1984). Actual prejudice is then shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a petitioner must show actual innocence by clear and convincing evidence. See Murray, 477 U.S. at 496.

Petitioner procedurally defaulted the duplicity claim because he did not raise it on direct appeal. Even if Petitioner were able to demonstrate cause to excuse this procedural default, he cannot demonstrate prejudice or actual innocence because the duplicity claim is meritless. See infra. Therefore, this claim is also subject to dismissal as procedurally defaulted from § 2255 review.

An indictment is duplicitous if it charges two offenses in one count, creating "the risk that a jury divided on two different offenses could nonetheless convict for the improperly fused double count." United States v. Robinson, 627 F.3d 941, 957 (4th Cir. 2010). Such a jury "would not unanimously agree on the offense that the defendant committed, violating the defendant's Sixth Amendment right to a unanimous verdict." United States v. Robinson, 855 F.3d 265, 269-70 (4th Cir. 2017) (citing United States v. Kakos, 483 U.S. 441, 444 (6th Cir. 2007)). A defendant must

38

raise a challenge to a defect in the indictment prior to trial. Fed. R. Civ. P. 12(b)(3)(B). An indictment error only warrants relief on collateral review when "it is so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had." Gibson v. United States, 244 F.2d 32, 33-34 (4th Cir. 1957).

Petitioner was charged in Count (3) with aiding and abetting his co-defendants "during and in relation to a crime of violence, that is, [conspiracy to commit Hobbs Act robbery] … as charged in Count One …, and during and in relation to a drug trafficking crime, that is, Conspiracy to Distribute and to Possess with Intent to Distribute a Controlled Substance … as charged in Count Two…, did knowingly and unlawfully possess and carry a firearm in furtherance of such crime of violence and drug trafficking crime…." (CR Doc. No. 18 at 2). Trial counsel raised a duplicity challenge to Counts (3) and (4) in a Motion to Dismiss. See (CR Doc. No. 31). The Court denied the duplicity argument because Count (3) "does not allege two separate and distinct crimes in a single count, but instead alleges two separate types of conduct which, if later proved, could result in one count of conviction." (CR Doc. No. 70 at 2). Petitioner has failed to demonstrate that any duplicity error occurred that is so obvious that there is no reasonable construction by which a valid conviction could be obtained. see United States v. Brandon, 298 F.3d 307, 314 (4th Cir. 2002) ("Where a statute specifies several alternative way in which an offense can be committed, the indictment may allege the several ways in the conjunctive, and a conviction thereon will stand if proof of one or more of the means of commission is sufficient.") (quoting United States v. Harvard, 103 F.3d 412, 420 (5th Cir. 1997)); United States v. Perry, 560 F.3d 246, 256 (4th Cir. 2009) ("when the Government charges in the conjunctive, and the statute is worded in the disjunctive, the district court can instruct the jury in the disjunctive."); see, e.g., Daniels v. United States, 2019 WL 5869751 (E.D.N.C. Oct. 22, 2019) (denying § 2255 petitioner's argument that the indictment was

39

duplicitous because the § 924(c) offense that charged conjunctively that petitioner knowingly used and carried a firearm during and in relation to a drug trafficking crime and possessed a firearm in furtherance of a drug trafficking crime, while the jury instructions listed the elements disjunctively; there was sufficient evidence presented a trial to show that the defendant committed the acts listed in the indictment, defendant was not denied his right to a unanimous jury, and defense counsel was not ineffective for failing to challenge the indictment as duplicitous). Therefore, Petitioner's duplicity claim would be denied on the merits even if it were not time-barred and procedurally defaulted.

**(B)      § 924(c)**

Petitioner contends that his § 924(c) conviction is invalid pursuant to United States v. Davis, 139 S.Ct. 2319 (2019) because the predicate offense of Hobbs Act conspiracy is not a crime of violence.

The Government concedes that this claim is timely pursuant to § 2255(f)(3) because it was filed within one year of Davis' issuance.

Johnson announced that the Armed Career Criminal Act's ("ACCA") residual clause[4] is void for vagueness, and that holding recognizes a retroactively applicable right. See Welch v. United States, 136 S.Ct. 1257, 1265 (2016). The Supreme Court held in Davis that § 924(c)(3)(B)'s residual clause[5] is unconstitutionally vague pursuant to the principles set forth in Johnson.

---

[4] ACCA defines a "violent felony" as any felony that: "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*"18 U.S.C.A. § 924(e)(2)(B) (emphasis added). The italicized portion of the definition is referred to as the residual clause.

[5] Section 924(c) provides for enhanced sentencing for any person who uses or carries a firearm or possesses a firearm in furtherance of any crime of violence or drug trafficking crime. A "crime of violence" is defined under § 924(c)(3) as a felony that: "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) *that by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.*" 18 U.S.C. § 924 (emphasis added). The italicized portion of the definition is referred to as the § 924(c) residual clause.

Petitioner contends that his § 924(c) conviction is invalid because it was predicated on Hobbs Act conspiracy, which is not a crime of violence pursuant to United States v. Simms, 914 F.3d 229 (4th Cir. 2019).

Assuming *arguendo* that this claim is not procedurally defaulted, it fails on the merits.[6] Petitioner's reliance on Simms is misplaced. The validity of Petitioner's § 924(c) conviction is not undermined by Simms because, absent the Hobbs conspiracy predicate, the § 924(c) conviction is supported alternatively by a drug trafficking crime which remains a valid predicate for that offense. As previously stated, Petitioner was charged with violating § 924(c) in two ways: in relation to the crime of violence charged in Count (1); and in relation to the drug trafficking crime charged in Count (2). The jury found Petitioner guilty of violating § 924(c) and also found him guilty of the two predicate offenses charged in Counts (1) and (2). Even though conspiracy to commit Hobbs Act robbery no longer qualifies as a crime of violence under § 924(c), Petitioner's conviction still stands because the jury also found him guilty of the § 924(c) offense in relation to a drug trafficking crime that it found him guilty of committing in Count (2). See United States v. Steward, 793 F. App'x 188 (4th Cir. 2019) (rejecting defendant's claim that the court plainly erred by instructing the jury that Hobbs Act conspiracy is a crime of violence under § 924(c) because defendant was also found guilty of Hobbs Act robbery and the jury was instructed that it could consider that

---

[6] See generally Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (disclaiming any intention "to suggest that the procedural-bar issue must invariably be resolved first" in a habeas case, and explaining that "[j]udicial economy might counsel" in favor of going directly to the merits if the merits are easily resolvable against the petitioner); United States v. Prescott, 221 F.3d 686, 688 (4th Cir. 2000) (recognizing that AEDPA's statute of limitations is not jurisdictional); Ramos-Martinez v. United States, 638 F.3d 315 (1st Cir. 2011) (noting that the "pragmatic approach" of bypassing a complex limitations issue "can be utilitarian in some cases" and that "a court occasionally may avoid addressing an enigmatic threshold issue by cutting directly to the merits"); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (federal courts are authorized to skip a relatively complicated procedural default question and proceed to deny the claim on the merits); Carr v. CIGNA Securities, Inc., 95 F.3d 544, 547 (7th Cir. 1996) (choosing to "skip over the tangled statutes of limitations issues" to "come directly" to the merits of the claims).

41

offense as the predicate crime of violence in support of the § 924(c) charge); United States v. Cannon, 778 F. App'x 259, 260-61 (4th Cir. 2019) (§ 924(c) conviction following a guilty plea was not plainly erroneous pursuant to Simms where that count was predicated on both Hobbs Act conspiracy and Hobbs Act robbery), *certiorari petition filed* March 18, 2020, 793 F. App'x 188. Therefore, Petitioner's Davis challenge to his § 924(c) conviction will be denied.

### IV. PENDING MOTIONS

In his *pro se* Motion to Amend, (Doc. No. 20), Petitioner challenges his § 924(c) conviction based on Davis. The Motion to Amend will be denied as moot because the Court appointed counsel to represent Petitioner, who filed a Supplemental Memorandum on his behalf presenting his § 924(c) challenges.

In his *pro se* Motion to be Transported to an FMC, (Doc. No. 24), that is dated October 8, 2019, Petitioner asks the Court to have him transferred to a federal medical facility due to his health problems. As a preliminary matter, this Motion is not properly before the Court because Petitioner filed it at the time he was represented by counsel. See McKaskle v. Wiggins, 465 U.S. 168, 183 (1984) (noting there is no constitutional right to a "hybrid representation" in which defendant is represented both by himself and by counsel); Cain v. Peters, 972 F.2d 748, 750 (7th Cir.1992) (representation by counsel and self-representation are mutually exclusive entitlements in light of McKaskle). Therefore, this Motion will be stricken as an unauthorized *pro se* filing. Moreover, the Court has no authority to direct the BOP to designate Petitioner to a particular facility. See 18 U.S.C. § 3621; Ajaj v. Smith, 108 F. App'x 743, 744 (4th Cir. 2004) ("[T]he Bureau of Prisons has discretion to determine where and under what conditions a federal prisoner is housed."). Therefore, even if the Motion were properly before the Court, it would be denied.

### V. CONCLUSION

For the foregoing reasons, the Court dismisses and denies Petitioner's § 2255 Motion to Vacate and Motion to Amend.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and the claims raised in the Motion to Amend Under Rule 15 of the Fed. R. of Civ. P., (Doc. No. 7), are **DISMISSED** and **DENIED**.

2. Petitioner' *pro se* Motion to Amend/Correct, (Doc. No. 20), is **DENIED** as moot.

3. Petitioner's *pro se* Motion to be Transported to an FMC, (Doc. No. 24), is **STRICKEN**.

4. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: June 29, 2020

Max O. Cogburn Jr.
United States District Judge

43